**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
-------------------------------------------------------------------------×

CARLA OTTLEY-COUSIN,

                        *Plaintiff*,

           *v.*

MMC HOLDINGS, INC. and MAIMONIDES MEDICAL
CENTER,

                        *Defendants*.

-------------------------------------------------------------------------×

**16 CV 0577**

**<u>COMPLAINT</u>**

Plaintiff Carla Ottley-Cousin, by counsel, The Harman Firm, LLP, alleges for her

Complaint against Defendants MMC Holdings, Inc. and Maimonides Medical Center as follows:

<u>PRELIMINARY STATEMENT</u>

1.      Plaintiff Carla Ottley-Cousin ("Plaintiff" or "Ms. Ottley-Cousin") seeks damages

and costs against Defendant MMC Holdings, Inc. ("Defendant MMCH" or "MMCH") and

Defendant Maimonides Medical Center ("Defendant Maimonides" or "Maimonides")

(hereinafter collectively referred to as "Defendants") for discriminating against Ms. Ottley-

Cousin, creating a hostile work environment, demoting her, and ultimately terminating her

because of her race, disability, use of FMLA leave, and complaining of this discrimination and in

retaliation.

2.      This matter arises under the Civil Rights Act of 1886, 42 U.S.C. § 1981 ("1981"),

the Family and Medical Leave Act of 1993, 29 U.S.C. §§ 2601–2654 ("FMLA"), and the New

York City Human Rights Law ("NYCHRL"), N.Y.C. Admin. Code §§ 8-101 to 8-131.

JURISDICTION AND VENUE

3.      Pursuant to 28 U.S.C. § 1331, this Court has jurisdiction over Plaintiff's claims as Defendants violated Plaintiff's rights under section 1981 and the FMLA

4.      Pursuant to 28 U.S.C. § 1367, this Court has supplemental jurisdiction over Plaintiff's claims brought under the NYCHRL, as the federal claims arise from the same set of operative facts as the NYCHRL claims, and form part of the same case or controversy.

5.      Pursuant to 28 U.S.C. § 1391(b), venue is proper in the United States District Court for the Eastern District of New York as a substantial part of the events giving rise to these claims occurred within this District.

TRIAL BY JURY

6.      Plaintiff respectfully requests a trial before a jury.

PARTIES

7.      Plaintiff Carla Ottley-Cousin, at all times relevant hereto, was and is a resident of Kings County, in the State of New York.

8.      Upon information and belief, at all times relevant hereto, Defendant MMC Holdings, Inc. was and is a corporation organized under the laws of New York with offices located at 4510 16th Ave., Brooklyn, New York, 11204.

9.      Upon information and belief, at all times relevant hereto, Defendant Maimonides Medical Center was and is a corporation organized under the laws of New York with offices located at 4802 10th Ave., Brooklyn, New York, 11219.

## STATEMENT OF FACTS

10.     Ms. Ottley-Cousin is an African-American and Hispanic woman.

11.     In and around May 2000, Ms. Ottley-Cousin began her employment with Defendant MMCH as a Customer Service Representative.

12.     Ms. Ottley-Cousin performed her work well and was acknowledged for doing so in annual performance reviews.

13.     In and around 2002, Ms. Ottley-Cousin's performance earned her a promotion to Billings Department Supervisor.  Ms. Ottley-Cousin remained in this position for another thirteen (13) years.

14.     In and around 2010, Ms. Ottley-Cousin began to work under Assistant Directors Cindy Albertson, a white woman, and Phyllis Matera, an Italian-American woman.

15.     Ms. Albertson and Ms. Matera created an extremely hostile work environment for Ms. Ottley-Cousin.

16.     Ms. Albertson treated Ms. Ottley-Cousin, the only black Supervisor in her department, markedly different from other white supervisors.

17.     Ms. Albertson frequently made offensive, racially motivated remarks that exposed her discriminatory beliefs.  For example, when referring to Puerto Ricans Ms. Albertson remarked, "Those people have no class."

18.     Additionally, Ms. Ottley-Cousin overheard Ms. Albertson say that a Hispanic employee would never earn a promotion because "those type of people are classless and tacky."

19.     Ms. Ottley-Cousin found the repeated statements regarding employees of color to be extremely offensive.

20.     As a woman of color and the only non-white supervisor, Ms. Ottley-Cousin was particularly discouraged by the offensive comments.

21.     Because of Ms. Ottley-Cousin's race, Ms. Albertson and Ms. Matera made her job extremely difficult by reprimanding her in front of her staff, exlcuding her from meetings, sending harrassing emails about her clothing, and falsely accusing her of breaking company policy.

22.     Ms. Albertson and Ms. Matera's constant harrassment caused Ms. Ottley-Cousin high levels of stress and ultimately led to Ms. Ottley-Cousin becoming depressed.   These work-related health issues took a toll on Ms. Ottley-Cousin, leading to crying fits during work hours and insomnia.

23.     In and around October 2014, Ms. Ottley-Cousin took FMLA leave to attend to her son's muscular dystrophy related medical appointments.

24.     Ms. Albertson expressed disapproval and derision toward Ms. Ottley-Cousin concerning her request to take time off to attend to her son's medical condition.

25.     On or about October 17, 2014, Ms. Ottley-Cousin returned to work from FMLA leave.

26.     As Ms. Ottley-Cousin's work-related stress grew increasingly worse, she began to visit both a psychologist and psychiatrist; both doctors suggested she take time off from work.

27.     Adhering to her doctor's recommendation, Ms. Ottley-Cousin followed proper MMC protocol and took FMLA leave beginning on October 20, 2014.

28.     Ms. Albertson once again expressed disapproval about Ms. Ottley-Cousin's need to take leave.

29.     Throughout Ms. Ottley-Cousin's disability leave she communicated with Defendants' Human Resources (HR) Manager, Susan Chou, on a bi-weekly basis.  Ms. Albertson called Ms. Ottley-Cousin once during her disability leave to check in on her.

30.     In and around February 2014, one (1) week before Ms. Ottley-Cousin's expected return to work from disability leave on February 17, 2014, HR called Ms. Ottley-Cousin and instructed her to contact Ms. Albertson.

31.     Ms. Ottley-Cousin called Ms. Albertson, who told Ms. Ottley-Cousin that there no longer was a position for her at MMCH because she did not check in with anyone throughout the four (4) months she was out on disability leave.

32.     Ms. Ottley-Cousin was surprised by Ms. Albertson's accusation because she communicated with both Ms. Albertson and Ms. Chou during her leave.

33.     Ms. Ottley-Cousin spoke to Ms. Chou concerning their communication during her disability leave.  Ms. Chou assured Ms. Ottley-Cousin that they would conduct an investigation and that she had nothing to worry about.

34.     In and around the following week, Ms. Ottley-Cousin was notified that she could return to work, but that she would be demoted from her position as Billings Department Supervisor to an Accounts Receivable Representative.

35.     Upon returning to work in her new position, Ms. Ottley-Cousin found her former assistant carrying out her supervisory responsibilities.

36.     As an Accounts Receivable Representative, Ms. Ottley-Cousin continued to report to Ms. Matera.

37.     MMCH is well aware of Ms. Ottley-Cousin's work-related stress and depression, but has failed to make any effort to reduce her stress since returning to work.

38.     In fact, Ms. Albertson and Ms. Matera intentionally increased their hostility as a result of Ms. Ottley-Cousin's disability, causing further work-related stress to Ms. Ottley-Cousin.

39.     Ms. Ottley-Cousin complained to Maimonides, at which point MMCH's Director, Mary Ferrari, became involved and Ms. Ottley-Cousin was moved to another location within the office under a new supervisor, Gale Cortez.

40.     Upon information and belief, Ms. Cortez is white and was previously married to a Puerto Rican man.

41.     Ms. Ottley-Cousin and another black co-worker were constantly subjected to Ms. Cortez's offensive racial comments in the office.  For example, Ms. Cortez was often heard saying, "Puerto Ricans are dumb," and, "Why are you are in this country if you don't speak English?"

42.     From May 2015 to August 2015, MMC held a series of meetings where employees complained to management about the culture of pervasive racism at MMC and less favorable treatment of minority employees by MMC management.

43.     In this period of time, Ms. Ottley-Cousin had several independent meetings with Ms. Ferrari detailing her personal accounts of discrimination and harassment.  Ms. Ferrari

justified the egregious discrimination from MMC's management by saying, "That's just their personality."

44.     In and around September 2015, Ms. Ottley-Cousin began to have panic attacks at work due to the daily harassment at the workplace.  She returned to her doctor who feared that Ms. Ottley-Cousin's condition would worsen if she did not take a break from work.

45.     Ms. Ottley-Cousin immediately notified HR that by her doctor's orders, she needed to take time off of work and requested FMLA leave.  HR was reluctant to approve Ms. Ottley-Cousin's leave, telling her that the department needed her.

46.     HR advised Ms. Ottley-Cousin that she was close to exhausting her FMLA leave and so it advised her to take off of work for one (1) month while they calculate the remainder of her FMLA leave.

47.     In and around September 2015, Ms. Ottley-Cousin commenced her FMLA leave.

48.     Throughout Ms. Ottley-Cousin's leave, she was frequently contacted by HR to determine when she would return to work.

49.     In and around October 2015, Ms. Ottley-Cousin notified HR that her doctor had still not cleared her to return to work.

50.     In and around late November 2015, HR contacted Ms. Ottley-Cousin, telling her that they had not heard from her and wanted to know if she intended to return to work.

51.     A few days later, Ms. Ottley-Cousin received a termination letter in the mail; MMHC terminated Ms. Ottley-Cousin purportedly for failing to communicate with MMCH throughout her FMLA leave and ultimately terminated her in retaliation for her leave and complaints.

52.     MMCH's reason for termination is false.  Ms. Ottley-Cousin frequently updated HR as to the status of her health.  MMCH discriminated against Ms. Ottley-Cousin because of her race, her disability, and for taking FMLA leave.

53.     MMCH did not attempt to determine whether further leave would be an acceptable accommodation for Ms. Ottley-Cousin, or whether there was any accommodation that would address Ms. Ottley-Cousin's disability.

54.     Ms. Ottley-Cousin has suffered direct and proximate emotional and financial harm as a result of MMCH and Maimonides's illegal conduct.


CAUSES OF ACTION

**FIRST CAUSE OF ACTION**
**Employment Discrimination in Violation of the Civil Rights Act of 1886, 42 U.S.C. § 1981**

55.     Plaintiff hereby realleges and incorporates each and every allegation contained in paragraphs 1 through 54 with the same force as though separately alleged herein.

56.     Section 1981 prohibits employers from discriminating against an employee in compensation, terms, conditions or privileges of employment on the basis of race.

57.     Defendants discriminated against Plaintiff by subjecting her to offensive, racially-motivated comments, treating her less well than her non-black and non-Hispanic coworkers, and ultimately demoting her because of her race.

58.     As a direct and proximate consequence of Defendants' race discrimination, Plaintiff has suffered, and continues to suffer, substantial economic and non-economic damages, including, but not limited to, back pay, front pay, and emotional distress and suffering, all in amounts to be determined at trial.

59.     Defendants' discriminatory treatment of Plaintiff was willful and/or in reckless disregard of Plaintiff's federally protected rights.  Accordingly, Plaintiff is entitled to an award of punitive damages against Defendant.

## SECOND CAUSE OF ACTION
### Retaliation in Violation of the Civil Rights Act of 1886, 42 U.S.C. § 1981

60.     Plaintiff hereby realleges and incorporates each and every allegation contained in paragraphs 1 through 59 with the same force as though separately alleged herein.

61.     Section 1981 prohibits employers from retaliating against any employee for making a complaint of racial discrimination.

62.     Defendants retaliated against Plaintiff by, *inter alia*, subjecting her to offensive, racially-motivated comments, demoting her, and ultimately terminating her.

63.     As a direct and proximate consequence of Defendants' race discrimination, Plaintiff has suffered, and continues to suffer, substantial economic and non-economic damages, including, but not limited to, back pay, front pay, and emotional distress and suffering, all in amounts to be determined at trial.

64.     Defendants' discriminatory treatment of Plaintiff was willful and/or in reckless disregard of Plaintiff's federally protected rights.  Accordingly, Plaintiff is entitled to an award of punitive damages against Defendants.

## THIRD CAUSE OF ACTION
### Retaliation in Violation of the FMLA
### 29 U.S.C. §§ 2601–54

65.     Plaintiff hereby realleges and incorporates each and every allegation contained in paragraphs 1 through 64 with the same force as though separately alleged herein.

66.     Defendants were hostile towards Plaintiff for needing to take FMLA leave to tend to her son and herself.

67.     Defendants demoted Plaintiff in retaliation for taking FMLA leave.

68.     Defendants continued to disfavor Plaintiff because she availed herself of FMLA leave.

69.     Defendants ultimately terminated Ms. Ottley-Cousin for taking FMLA leave.

70.     As a result, Plaintiff is entitled to equitable relief, economic damages, liquidated damages, attorneys' fees and costs, and such other and further relief as the Court deems just.

**FOURTH CAUSE OF ACTION**
**Race Discrimination in Violation of the NYCHRL**

71.     Plaintiff hereby realleges and incorporates each and every allegation contained in paragraphs 1 through 70 with the same force as though separately alleged herein.

72.     The NYCHRL prohibits employers from discriminating against an employee in compensation, terms, conditions or privileges of employment on the basis of race.

73.     Defendants discriminated against Plaintiff by subjecting her to offensive, racially-motivated comments, treating her less well than her non-black and non-Hispanic coworkers.

74.     As a direct and proximate consequence of Defendants' race discrimination, Plaintiff has suffered, and continues to suffer, substantial damages, including, but not limited to, emotional distress and suffering, all in amounts to be determined at trial.

75.     Defendants' discriminatory treatment of Plaintiff was willful and/or in reckless disregard of Plaintiff's protected rights.  Accordingly, Plaintiff is entitled to an award of punitive damages against Defendants.

**FIFTH CAUSE OF ACTION**
**Retaliation in Violation of the New York City Human Rights Law, as codified at N.Y.C.**
**Admin. Code §§ 8-101–8-131**

76.     Plaintiff hereby realleges and incorporates each and every allegation contained in paragraphs 1 through 75 with the same force as though separately alleged herein.

77.     NYCHRL prohibits retaliation by an employer against an employee for complaining of discriminatory practices illegal within the NYCHRL.

78.     Plaintiff complained of race and disability discrimination, which Defendants ignored and retaliated against her for by, *inter alia,* demoting her and ultimately, terminating her.

79.     As a direct and proximate consequence of Defendants' retaliation, Plaintiffs has suffered, and continues to suffer, substantial economic damages.

80.     Defendants' discriminatory treatment of Plaintiff was willful and/or in reckless disregard of Plaintiff's protected rights.  Accordingly, Plaintiff is entitled to an award of punitive damages against Defendants.

**SIXTH CAUSE OF ACTION**
**Illegal Disability Discrimination in Violation of the NYCHRL**

81.     Plaintiff hereby realleges and incorporates each and every allegation contained in paragraphs 1 through 80 with the same force as though separately alleged herein.

82.     NYCHRL prohibits discrimination against a person because of the actual or perceived disability of a person.

83.     Defendants discriminated against Plaintiff by retaliating against Plaintiff for taking disability leave.

84.     Defendants demoted Plaintiff after she took time off to address her disability.

85.     Defendants made no effort to determine whether they could accommodate Plaintiff, instead, they terminated her.

11

86.     As a direct and proximate consequence of Defendants' disability discrimination, Plaintiff has suffered, and continues to suffer, substantial economic and non-economic damages, including, but not limited to, back pay, front pay, and emotional distress and suffering, all in amounts to be determined at trial.

87.     Plaintiff is entitled to compensatory damages, punitive damages, costs, attorneys' fees, and any other damages and compensation that the Court deems appropriate

**Request for Relief**

**WHEREFORE**, Plaintiff respectfully requests the following relief:

A. For the first claim, actual damages to be determined at trial, but in no event less than $250,000;

B. For the second claim, actual damages to be determined at trial, but in no event less than $400,000;

C. For the third claim, actual damages to be determined at trial, but in no event less than $400,000;

D. For the fourth claim, actual damages to be determined at trial, but in no event less than $250,000;

E. For the fifth claim, actual damages to be determined at trial, but in no event less than $400,000;

F. For the sixth claim, actual damages to be determined at trial, but in no event less than $250,000;

G. An award of compensatory, assumed, and punitive damages;

H. Pre-judgment and post-judgment interest;

I. Attorneys' fees and costs; and

J. For such other and further relief as the Court deems just and proper.

Dated:     New York, New York
           February 3, 2016

                                    THE HARMAN FIRM, LLP

                                    By:_____
                                        Walker G. Harman, Jr. |WH-8044|
                                        Owen H. Laird |OL-6994|
                                        *Attorneys for Plaintiff*
                                        220 Fifth Avenue, Suite 900
                                        New York, NY 10001
                                        (212) 425-2600
                                        wharman@theharmanfirm.com
                                        olaird@theharmanfirm.com